*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0366p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

      *Plaintiff-Appellant,*

      *v.*

WILLIAM A. FINK,

      *Defendant-Appellee.*

No. 06-3436

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-00422—Peter C. Economus, District Judge.

Argued: April 17, 2007

Decided and Filed: September 7, 2007

Before: SUHRHEINRICH and GIBBONS, Circuit Judges; HEYBURN, Chief District Judge.[*]

---

**COUNSEL**

**ARGUED:** Michael A. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellant. Robert Smith, III, Cleveland, Ohio, for Appellee. **ON BRIEF:** Michael A. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellant. Robert Smith, III, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

    JULIA SMITH GIBBONS, Circuit Judge. Following a period of FBI surveillance and his subsequent indictment, defendant William A. Fink pled guilty to distribution of child pornography. The district court found the appropriate sentencing range under the Sentencing Guidelines to be 188 to 235 months. The district court sentenced Fink to 70 months imprisonment and five years of supervised release. The government appeals, asserting that the sentence is substantively unreasonable. For the following reasons, we agree and vacate the sentence and remand for resentencing.

---

[*]The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

I.

From February through December 2004, Fink distributed child pornography through an Internet chat room. In return, Fink received deliberately corrupted digital files, purported to be child pornography, from an undercover FBI agent. At the relevant time, Fink was the pastor of a church in Mentor, Ohio, and he used the church computer to store and transmit the images. Following several months of online communication, and pursuant to a search warrant, federal agents seized three computers from the church in June 2005. Two of those computers were later found to contain numerous images of child pornography. At the time of the search, Fink gave consent to search his personal computer, which also contained numerous saved images of child pornography.

On August 31, 2005, a federal grand jury returned a one-count indictment charging Fink with distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). On October 25, 2005, Fink pled guilty to the indictment. At the sentencing hearing, the district court found the base offense level for distribution of child pornography to be 22, pursuant to U.S.S.G. § 2G2.2(a)(2). The court also made the following adjustments: a two-level increase pursuant to U.S.S.G. § 2G2.2(b)(2), because the pornography involved prepubescent minors; a five-level increase pursuant to U.S.S.G. § 2G2.2(b)(3)(B), for distributing child pornography in expectation of a thing of value in return (here, more child pornography); a four-level increase, pursuant to U.S.S.G. § 2G2.2(b)(4), because the material portrayed images of  sadistic conduct  and/or depictions of violence; a two-level increase pursuant to U.S.S.G. § 2G2.2(b)(6), because a computer was involved in the offense; and a four-level increase pursuant to U.S.S.G. § 2G2.2(b)(7)(C), because the number of images (including videos) retrieved was at least 300 but fewer than 600. With a three-level downward adjustment for acceptance of responsibility, Fink's total offense level was 36. Fink's criminal history category was Level I, resulting in a Guidelines range of 188 to 235 months. There were no objections to the applicable Guidelines range.

The Presentence Report (PSR) reveals that Fink sexually molested his daughter at least once in the past. Roughly 15 years ago, when Fink's daughter was approximately 12 years old, she disclosed to her school teacher that her mother and father (Fink) had touched her inappropriately. Fink called a social service agency to report the abuse and ultimately left the family's home. Fink subsequently worked with a social worker and sought mental health treatment and family counseling. Fink returned to the family home after being gone roughly 18 months and continued counseling for another 36 months.

At the sentencing hearing, the district court acknowledged that it had read the indictment and PSR and was familiar with Fink's personal history. The court noted that Fink himself had been a victim of sexual abuse and found that "it's logical that this deviant behavior that the defendant became involved in was probably caused to a degree by his sexual abuse." The court went on to note that it "had to balance [Fink's] personal history with the need to deter the defendant and others who have committed similar offenses, and to protect the public from further crimes." The court stated that it had considered sentences imposed on defendants for similar conduct and that it was having difficulty reconciling Fink's Guidelines range with another case in which "the individual was charged with the same offense . . . before the mandatory minimum came into effect, where this Court imposed a sentence of 49 months." The court also noted defendants in two other cases who had received relatively short sentences for similar conduct.[1]

After stating that the court had a duty to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," the court

---

[1] The court later clarified that both the referenced cases predated the passage of the Prosecutorial Remedies and Other Tools to End Exploitation of Children Today Act of 2003 ("PROTECT Act"). Pub. L. No. 108-066, 117 Stat. 650 (2003). The PROTECT Act prohibits computer generated child pornography and provides minimum sentences for possession and distribution of child pornography, among other things.

announced that a sentence of 70 months imprisonment and five years of supervised release was "appropriate to meet the sentencing goals of punishment, deterrence and safety to the community." For its statement of reasons, the court attached a copy of the transcript of the sentencing hearing to the judgment. The government noted its objection to the sentence and iterated its request for a sentence within the Guidelines range. The government then filed a timely notice of appeal.

## II.

When considering sentencing decisions, this court reviews a district court's factual findings for clear error while reviewing the district court's conclusions of law *de novo*. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005). This court reviews a district court's application of the United States Sentencing Guidelines *de novo*. *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005). The court also reviews sentencing decisions for reasonableness. *United States v. Booker*, 543 U.S. 220, 264-65 (2005). Because the district court's sentence was not within the Guidelines range, the rebuttable presumption of reasonableness does not apply to this sentence. *See United States v. Williams*, 436 F.3d 706, 707-08 (6th Cir. 2006).

## III.

The only issue on appeal is whether the 70-month sentence imposed by the district court is substantively reasonable within the meaning of *Booker*. After *Booker*, the Sentencing Guidelines constitute an advisory rather than mandatory scheme. *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006). "Without the 'mandatory' provision, the Sentencing Reform Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals." *Booker*, 543 U.S. at 259. "While not bound to apply the Guidelines," district courts "must consult those Guidelines and take them into account when sentencing." *Id.* at 264. As a consequence, "[18 U.S.C.] § 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Id.* at 261.

Under this scheme, the district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006). This court's reasonableness review is split into two separate inquiries: procedural reasonableness and substantive reasonableness. A sentence may be procedurally unreasonable if "the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). A sentence may be found substantively unreasonable when the district court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (quoting *Webb*, 403 F.3d at 385) (alteration in original). Here, we consider only whether the sentence imposed by the district court is substantively reasonable.

This court applies a form of proportionality review: "the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) must be." *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006) (internal quotation marks omitted). Although it is true that there is no mathematical percentage or formula that can define a reasonable sentence in the post-*Booker* world, *see Collington*, 461 F.3d at 808 n.2, it is also true that "a large variance requires a greater explanation." *Id.* at 809. Here, the district court varied downward 118 months from the bottom of the Guidelines range (188 to 235 months) to arrive at a sentence of 70 months. In these circumstances, the court's justification for the substantial variance must be a compelling one.

We therefore begin by examining the district court's consideration of the relevant § 3553(a) factors. Under 18 U.S.C. § 3553(a)(1), the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. The district court noted Fink's personal history and characteristics; most notably it emphasized that he had suffered sexual abuse as a child. The court, however, failed to mention that Fink had previously molested his daughter. Indeed, the court's statement that a 70-month sentence would permit Fink "to reflect on [his] criminal behavior and to hopefully draw some insight into this deviant behavior, and treatment will help" is less convincing in light of Fink's previous transgression.

Under 18 U.S.C. § 3553(a)(2)(A), the sentence imposed must reflect the seriousness of and provide just punishment for the offense. Although the district court acknowledged that distribution of child pornography was a serious offense, it also suggested that it was less serious than enticing a child and emphasized that it did not appear that Fink intended to engage in sexual conduct with children. However, as noted by the Fifth Circuit, this consideration is already incorporated into the Guidelines: "Congress established a series of distinctly separate offenses respecting child pornography, with higher sentences for offenses involving conduct more likely to be, or more directly, harmful to minors than the mere possession offense. Similarly, the guidelines clearly reflect consideration of whether and the degree to which harm to minors is or has been involved." *United States v. Duhon*, 440 F.3d 711, 718 (5th Cir. 2006).

Fink's sentence is also unlikely to afford adequate deterrence to criminal conduct of this type, as required by 18 U.S.C. § 3553(a)(2)(B). Such a substantial variance in a case without exceptional factual circumstances implies that a sentence at or near the statutory minimum is typical for such offenses. Fink's sentence also may not adequately "protect the public from further crimes of the defendant," as required by 18 U.S.C. § 3553(a)(2)(C). Fink's molestation of his daughter 12 years prior to this offense could suggest that his behavior is a persistent problem. The district court appears not to have considered this important factor.

Under 18 U.S.C. § 3553(a)(6), the court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" The district court placed considerable emphasis on this factor, but the cases to which it compared Fink's conduct are quite different from this case. As an initial matter, the cited cases involved enticement of minors, not distribution of child pornography. Further, the district court emphasized the 17-month sentence of one particular defendant, but the defendant in that case was charged only with receipt of child pornography, not distribution.

Moreover, the Guidelines have changed significantly between the time of the referenced cases and when Fink's offenses took place. The defendants in the purportedly comparable cases were sentenced in 2001 and 2002, prior to Congress's enactment of the PROTECT Act and the concomitant revision to the Guidelines. The PROTECT Act reflects Congress's intention to enhance the consequences attached to distribution of child pornography, and the district court's comparison of Fink's case to pre-PROTECT Act sentences effectively negates this Congressional prerogative. Paradoxically, the court's effort to avoid sentencing disparity will only create such disparity; because this case is largely without exceptional circumstances, any subsequent defendant must either be sentenced comparably to Fink (and therefore well below the Guidelines range), or at or near the Guidelines range and thus have a drastically different sentence from Fink.

Perhaps most problematic, in light of the statutory minimum, Fink's sentence represents almost the most extreme variance possible. The 70-month sentence is only ten months greater than the 5-year minimum imposed by 18 U.S.C. § 2252A(b)(1); this leaves virtually no room to make future distinctions between Fink's case and the cases of worthy defendants that exhibit more compelling factual circumstances. *See Davis*, 458 F.3d at 497, 499 (finding that a downward variance to a one-day sentence based on the passage of time and age of the defendant left no room for discretion for other defendants); *cf. United States v. Moreland*, 437 F.3d 424, 437 (4th Cir. 2006)

(finding that "[i]f Moreland's circumstances are so compelling as to warrant a two-thirds reduction from the bottom of the guideline range, it is difficult to imagine any meaningful limit on the discretion of the district court."); *United States v. Haack*, 403 F.3d 997, 1005 (8th Cir. 2005) (noting in a pre-*Booker* setting that "[a] departure of this extent," 120 months to 78 months, "leaves little room for greater departures for defendants" who present even more compelling reasons for leniency). Radical downward variances and departures are best reserved for the most deserving of defendants. *See United States v. Husein*, 478 F.3d 318, 334 (6th Cir. 2007) (affirming a significant downward departure while noting that "'more worthy defendants' than Husein are difficult to imagine"). If a defendant with a history of sexual molestation who transmits hundreds of images of child pornography still receives near the statutory minimum, a district court could not easily justify sentencing other similarly situated offenders, or offenders who do not have a history of sexual assault, to a greater sentence. Indeed, Fink's sentence effectively erases all but one of the adjustments added to Fink's base sentence – distribution in expectation of receipt of a thing of value. As a result, the sentence essentially attaches no consequence to Fink's distribution of images of children under 12 years of age, portraying sadistic conduct, using a computer, or the distribution of hundreds of images.

Here, the sentence given involves an extraordinary variance—a sentence roughly one-third the length of the lower end of the Guidelines range. The absence of factors justifying such a radical variance, as well as the presence of factors which the district court did not address, lead us to conclude that the sentence imposed is unreasonable.[2]

IV.

For the foregoing reasons, we vacate the sentence and remand for resentencing.

---

[2]Two recent cases provide insight into this court's approach to these issues. *Compare United States v. Borho*, 485 F.3d 904 (6th Cir. 2007) (vacating and remanding a sentence of 72 months where the applicable Guidelines range called for a sentence of between 210 and 262 months, after finding that the facts relied upon to justify the extreme downward variance did not rise to the level of extraordinary circumstances), *with United States v. Cherry*, 487 F.3d 366 (6th Cir. 2007) (affirming a sentence of 120 months where the applicable Guidelines range called for a sentence of between 210 and 262 months, after finding that the district court appropriately took into account the Guidelines range and the circumstances of the particular defendant). We endorse the approach of these cases, and conclude that the appeal before us most closely resembles *Borho*, rather than *Cherry*.